UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BIENVENIDO ANTONIO SANTANA, *pro se*,      :
                                            :
                    Petitioner,             :
                                            :       **MEMORANDUM & ORDER**
            -against-                       :       15-CV-6785
                                            :       13-CR-472
UNITED STATES OF AMERICA,                   :
                                            :
                    Respondent.             :
------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

On September 17, 2013, *pro se*[1] petitioner Bienvenido Antonio Santana ("Petitioner") pled guilty, pursuant to a plea agreement, to one count of attempted illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). On January 31, 2014, this Court sentenced Petitioner to 57 months' imprisonment, three years of supervised release with special conditions, and imposed a $100 special assessment fee. Petitioner, through his attorney, appealed his conviction and sentence *in forma pauperis*. On July 21, 2015, the Second Circuit dismissed Petitioner's appeal as barred by the waiver of rights contained in Petitioner's plea agreement. *See*, Mandate, Dkt. 13-CR-472, Entry No. 26.

On November 24, 2015, Petitioner filed a motion to "vacate, set aside or correct sentence," (the "Petition") pursuant to 28 U.S.C. § 2255 ("Section 2255"). *See, generally*, Mot. to Vacate ("Pet."), Dkt. 13-CR-472, Entry No. 27. Petitioner contends that his counsel was ineffective for his failure to: (1) request a plea agreement as part of the illegal reentry fast track program; and (2)

---

[1] In reviewing Petitioner's motion, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Accordingly, the Court interprets the motion "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

challenge the criminal history calculation in the Presentence Investigation Report ("PSR").  *See, generally, Id.*  The government opposed the Petition on December 22, 2015, arguing that Petitioner waived his right to challenge his sentence when he entered into the plea agreement.  *See,* Mem. in Opp. to Mot. to Vacate ("Opp."), Dkt. 13-CR-472, Entry No. 29.  Petitioner replied on February 2, 2016.  *See,* Resp. to Gov't Opp. ("Reply"), Dkt. 13-CR-472, Entry No. 30.

For the reasons set forth below, Petitioner's motion is denied in its entirety.

## BACKGROUND

On July 11, 2013, Petitioner arrived at John F. Kennedy International Airport aboard a flight from Santo Domingo, Dominican Republic.  *See,* Compl., Dkt. 13-CR-472, Entry No. 1 ¶ 2.  Petitioner presented a purportedly valid United States passport, which had Petitioner's photo, but was not issued in Petitioner's name.  *Id.*  Petitioner stated that he was a returning United States citizen.  *Id.*  A Customs and Border Patrol ("CBP") Officer performed a secondary screening of Petitioner.  *Id.* at ¶ 3.  During the secondary examination, the CBP Officer examined some of Petitioner's personal effects and discovered a receipt in the name of "Bienvenido Santana."  *Id.*  When CBP Officers questioned Petitioner about his background and previous travel, Petitioner provided a series of inconsistent answers.  *Id.*  Petitioner then admitted that his real name was Bienvenido Santana, and that he had previous criminal convictions in the United States for which he had been deported.  *Id.*  CBP Officers fingerprinted Petitioner and, upon confirming that the fingerprints belonged to an individual named "Bienvenido Santana," arrested Petitioner.  *Id.* ¶ 4.  Through a fingerprint report, CBP Officers confirmed that, on February 12, 1999, Petitioner was convicted of an aggravated felony offense.  *Id.* ¶ 5.  Petitioner was deported on October 8, 2003, following the completion of his sentence for the February 12, 1999 conviction.

CBP Officers read Petitioner his *Miranda* rights in Spanish, which he stated he understood

2

and agreed to waive. *Id.* ¶ 6. Petitioner told the CBP Officers that his true name is Bienvenido Antonio Santana. *Id.* Petitioner explained that he entered the United States illegally in 1985 and was arrested in 1996 or 1997 on drug related charges. *Id.* Petitioner further stated that he was convicted on those charges, sentenced to prison, and then deported from the United States. *Id.* Petitioner explained that he purchased identity documents for another individual and eventually used those documents to apply for a United States passport. *Id.* Petitioner stated that the individual who sold him the identity documents told Petitioner that those documents belonged to a living person. *Id.*

On August 8, 2013, a grand jury of the Eastern District of New York returned an indictment charging Petitioner with: (1) attempted illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(2) (Count One); (2) use of a passport secured by false statements in violation of 18 U.S.C. § 1542 (Count Two); and (3) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(7) (Count Three). Indictment, Dkt. 13-CR-472, Entry No. 5.

On September 17, 2013, Petitioner pled guilty to Count One of the Indictment pursuant to a plea agreement. *See, generally,* Letter dated March 22, 2019, Ex. A ("Plea Agreement"), Dkt. Entry No. 32-1; Ex. C ("Plea Tr."), Dkt. Entry No. 32-3. In the plea agreement, the government assumed that Petitioner fell within a Criminal History Category II and calculated an adjusted offense level of 21 for acceptance of responsibility, with an estimated range of 41 to 51 months' imprisonment. *See,* Plea Agreement ¶ 2. The plea agreement provided that "[t]he Guidelines estimate set forth in paragraph 2 is not binding on the Office, the Probation Department or the Court." *Id.* ¶ 3. The plea agreement further provided that "[t]he defendant agrees not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 57 months

or below. This waiver is binding without regard to the sentencing analysis used by the Court." *Id.* ¶ 4.

At the change of plea hearing, the Court advised Petitioner, among other things, that by entering into the plea agreement, Petitioner was waiving his right to challenge his conviction if he was sentenced to 57 months or below. Plea Tr. 19-20, 30-31. Petitioner, who was under oath, stated that he understood. *Id.* 20, 30-31. The Court further advised Petitioner that the Guideline estimate in the plea agreement was not binding on the Government, the United States Probation Office for the Eastern District of New York ("Probation"), or the Court. *Id.* Again, Petitioner stated that he understood further that if it should turn out that this estimate is wrong, Petitioner would not be allowed to withdraw his plea. *Id.* The Court accepted Petitioner's guilty plea, finding that he pled knowingly and voluntarily, that there was a factual basis for his plea, and with the understanding that, by pleading guilty, he was giving up certain rights that would otherwise be afforded to him. *Id.* 34-35.

On December 16, 2013, Probation issued a Presentence Report ("PSR"), in which Probation calculated Petitioner's total offense level as 21, including a three level reduction for acceptance of responsibility. *See,* PSR, Dkt. 13-CR-472, Entry No. 14 ¶ 24. Probation also calculated that Petitioner fell into a Criminal History Category III, not a Criminal History Category II as assumed in the plea agreement. *Id.* ¶ 31. Probation calculated a guideline imprisonment range of 46 to 57 months in the PSR. *Id.* ¶ 62.

The Court sentenced Petitioner on January 31, 2014. Letter dated March 22, 2019, Ex. C ("Sent. Tr.") at 7-9, Dkt. Entry No. 32-2, at 7-9. During the sentencing, the Court corrected typographical errors in the PSR and then adopted the PSR, determining that the applicable guidelines range was 46 to 57 months as calculated by Probation. *Id.* 9-10. The Court sentenced

Petitioner to 57 months' imprisonment. *Id.* at 26. Petitioner appealed his sentence. The appeal was dismissed by the Second Circuit Court of Appeals on July 21, 2015 as barred by the valid waiver of rights contained in the plea agreement.

## DISCUSSION

### I. Legal Standards

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). Under Section 2255, a sentencing court may "vacate, set aside or correct a sentence" imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255. Relief generally is "available only for a constitutional error, defect of jurisdiction, or an error of law constituting a fundamental defect which inherently results in a complete miscarriage of justice." *Scala v. United States*, 2010 WL 3780320, at *1 (E.D.N.Y. Sept. 21, 2010) (citations and internal quotation marks omitted).

"Where the record clearly demonstrates that the defendant's waiver of [his] right to appeal a sentence with an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004); *See also*, *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (It is "well established that a knowing and voluntary waiver of the right to appeal is generally enforceable."). "In no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993). "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary. . . ." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008).

5

The Second Circuit has held that there are instances where a petitioner may appeal or collaterally attack a conviction notwithstanding a waiver, including "the defendant's right to appeal on the grounds of ineffective assistance of counsel. . . ." *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997) (internal quotation marks and citations omitted). However, in those circumstances, the petitioner challenged counsel's assistance in entering the plea agreement, not counsel's conduct at sentencing. *See, e.g.*, *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) ("[T]he refusal to apply such a waiver provision in these circumstances only allows appellate review of the constitutionality of the process by which the plea agreement was consummated."); *United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a defendant may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within acceptable standards.") (internal quotation marks, alterations, and citations omitted).

## II.  Analysis

### A. Applicability of Waiver

Petitioner's plea agreement prohibits the Court from reaching the merits of his ineffective assistance of counsel claims. *See, Parisi,* 529 F.3d at 138. Through the plea agreement, Petitioner knowingly and voluntarily waived his right to appeal or collaterally attack a sentence of 57 months or below. *See,* Plea Agreement ¶ 4. Defendant does not challenge the "constitutionality of the process by which the plea agreement was consummated." *See, Hernandez*, 242 F.3d at 114. Instead, Petitioner asserts "independent claims relating to the deprivation of constitutional rights

that occurred prior to the entry of the guilty plea." *See, Torres*, 129 F.3d at 715 (alterations omitted). Because Petitioner waived his right to bring such claims, the Petition is denied.

Even if Petitioner asserted that his counsel's alleged failure to request a plea agreement as part of the illegal reentry fast track program caused Petitioner to plead unknowingly or involuntarily, which he does not, Petitioner's claim would be without merit. The Eastern District of New York's illegal reentry fast track program allows defendants charged solely with illegal reentry to plead guilty and waive certain rights in exchange for a lower sentence. *See, United States v. Lopez*, 523 F. App'x 845, 846 n.1 (2d Cir. 2013) (summary order) (citing *United States v. Mejia*, 461 F.3d 158, 160-61 (2d Cir. 2006)). Here, Petitioner was charged with attempted illegal reentry into the United States, use of passport secured by false statements, and aggravated identity theft. *See,* Indictment. Thus, Petitioner would not have been eligible for the fast track program.

**B. Petitioner is Not Entitled to a Hearing**

Petitioner also seeks an evidentiary hearing to advance his claim. Pet. at 30. "The decision whether to hold an evidentiary hearing on a 2255 motion is generally left to the discretion of the district court." *Swerbilov v. United States*, 2005 WL 1177938, at *2 (E.D.N.Y. May 18, 2005) (citing *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1997)). Where a court has familiarity with a case, it can rely on such familiarity in dismissing a petition without a hearing. *See, Stokes v. United States*, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001) (citing *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990)); *See also, Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2011) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) ("[A]lthough a hearing may be warranted, that conclusion does not imply that a movant must always be allowed to appear in district court for a full hearing. . . .") (internal quotation marks omitted). Under the circumstances

of this case, it is evident that the record is sufficient to decide Petitioner's motion without an evidentiary hearing. Given the Court's familiarity with the case and the evidence in the record, the Court finds that an evidentiary hearing would "add little or nothing to the written submissions" and, therefore, is not required. *See, Chang*, 250 F.3d at 86.

## CONCLUSION

For the reasons set forth above, Petitioner's motion pursuant to 28 U.S.C. § 2255 is denied in its entirety. In addition, Petitioner's request for an evidentiary hearing is denied as unnecessary. Petitioner further is denied a certificate of appealability, as he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *See,* Fed. R. App. P. 22(b); *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See, Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      March 25, 2019

                                                     /s/
                                      DORA L. IRIZARRY
                                          Chief Judge